THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JULIO MONTES, Defendant-Appellant.

First District (6th Division)   No. 1—87—1769

Opinion filed December 22, 1989.—Rehearing denied January 18, 1990.

Randolph N. Stone, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Gael O'Brien, and Paul Gliatta, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The defendant, Julio Montes, was indicted with Walter Godinez for murder, attempted armed robbery and armed violence. The defendant's case was severed from that of Godinez; after a bench trial, he was found guilty of all three charges and sentenced to 20 years' imprisonment. A jury later convicted Godinez of murder; and that conviction was affirmed. *People v. Godinez* (1989), 191 Ill. App. 3d 6.

Eduardo Soto was shot to death around 1 a.m. on April 28, 1986, at 1653 North Francisco in Chicago. A post-mortem examination of Soto's body disclosed a close-contact wound to the right ear penetrating the brain, a close-range wound to the left side of the neck exiting the right cheek and a close-range wound to the left side of the neck exiting from the back. A .38 caliber bullet was recovered from the body.

The defendant was arrested by investigating officer William Rose on April 30 at 11 p.m. in the 1600 block of Fairfield, approximately one-half mile from where Soto had been killed. The defendant orally confessed to his participation in the killing and subsequently made a typewritten confession to an assistant State's Attorney. In substance, he said that Walter Godinez had attempted to rob Soto and shot him while the defendant acted as a lookout. Two witnesses, who lived near the scene of the shooting but in separate buildings, testified that they heard shots and looked out their windows; one saw two men, and the other saw one man. One identified Godinez; but neither was able to identify the defendant.

Before the trial the defendant made a motion to quash his arrest and to suppress his confessions. After a hearing, the motion was denied; and that denial is one of the defendant's contentions of error.

William Rose testified that he had been a member of the 14th District Tactical Unit for three years and a police officer for five years. He was assigned to investigate the homicide of Soto on April 28. On April 29 he interviewed neighbors around the scene; he also spoke to people and gang members known to frequent the area. From those in-

terviews, he had reason to believe that members of the Latin Disciples street gang committed the Soto homicide.

He continued his investigation on April 30 by interviewing other people in the area. He spoke with two informants. One informant, a member of the Latin Disciples street gang, told him that one of the offenders was named "Wally." The informant had previously heard on the street that "Wally" was the offender. At approximately 10 p.m. he spoke to a second informant. That informant, who was also a gang member, told Rose that he had heard "Wally" bragging about the killing; and "Wally" said "Little Man" was involved in the killing. Rose knew both informants; the second informant had given him reliable information in the past. Rose knew "Wally" to be Walter Godinez and "Little Man" to be the defendant. He also knew that both Godinez and the defendant were members of the Maniac Latin Disciple street gang.

Another officer on Rose's team made arrangements through a friend of Godinez to meet Godinez at the corner of Western and Wabansia. Meanwhile, Rose and other members of the tactical unit continued to tour the neighborhood to locate the defendant. At approximately 11 p.m. the officers saw the defendant at the 1600 block of Fairfield. Rose stopped the defendant, announced he was an officer, handcuffed him and put him in a squad car. He told the defendant that he had been implicated in a homicide and advised him of his rights. The defendant, who was 16 years old at the time, began to cry and stated that he did not shoot the victim but that "Wally" did. Without further conversation, Rose and his partner brought the defendant into the tactical office and turned the case over to the Area 5 detectives. Rose said that he knew "Wally" based upon his nickname and did not have to look up his identity in the files. He repeated that he also knew the defendant as "Little Man."

The defendant testified that three officers stopped him on Fairfield and Wabansia, searched him, read him his rights, handcuffed him and transported him to the Shakespeare Avenue police station. At about 5 p.m. on May 1, 1986, the officers took him for a polygraph test. His nickname was "Little Man" and Godinez's nickname was "Wally." When he got into the squad car at about 11 p.m., he told the officers that "Wally" committed the murder under investigation. He admitted that he and Godinez were members of the Latin Disciples from the area of the homicide. Godinez was a chief.

In *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147, the supreme court expressed certain rules applicable to warrantless arrests in which the arresting officer relies on an informant's "tips":

■ Since the term "reasonable grounds" justifying a warrantless

arrest has the same substantive meaning as "probable cause" which is required of a magistrate before he may issue a warrant, the trial court making a determination of the validity of a warrantless arrest is to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant.

To determine whether a warrantless arrest meets the reasonable-grounds/probable-cause requirement, the trial court must decide whether a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense. In determining whether the officer had probable cause, the officer's factual knowledge, based on his prior law-enforcement experience, is relevant.

■■ In an application for a warrant, a police officer's statements to a magistrate may be based on hearsay; and the magistrate should look to the totality of the circumstances when assessing a statement that relies on an informant's story. (*Tisler*, 103 Ill. 2d at 237-38.) Factors which should be considered are whether the police officer had independent information that corroborates the informant's story and whether the informant obtained his story "in a reliable fashion" such as "from the alleged wrongdoer" himself. *Tisler*, 103 Ill. 2d at 238-39.

■■ With those rules as guidelines, the issue here is whether Officer Rose possessed knowledge that would justify a reasonable and prudent man to believe that the defendant had committed the offense. We conclude that Officer Rose did have such knowledge.

For comparison purposes we refer to those cases which have upheld search warrants based on statements of confidential informants that have led to gambling and narcotics arrests. (*E.g., People v. Dillon* (1970), 44 Ill. 2d 482, 256 N.E.2d 451 (gambling); *People v. Curry* (1980), 84 Ill. App. 3d 256, 405 N.E.2d 373 (narcotics).) In those cases the officers had no independent knowledge that a crime had, in fact, been committed; the proof of existence of a crime depended entirely on the statements made by the informants; and yet the arrests and searches were held valid. In this case, the officers themselves knew that a murder had been committed. The State's argument, therefore, begins with the benefit of a substantial underpinning not present in the aforementioned cases which have nevertheless upheld arrests. In addition, the informant, who had previously given reliable information to Rose, had, in effect, heard "Wally" confess to the crime. Thus, the informant obtained his story "in a reliable fashion"—"from the alleged wrongdoer" himself. (*Tisler*, 103 Ill. 2d at 239.) Last, the officer had independent knowledge corroborating the informant in that he knew that "Wally" and "Little Man" were Godinez and the defendant; and

he also knew that they were both members of the Latin Disciples.

The defendant has referred us to two cases, *People v. Grzeskiewicz* (1981), 94 Ill. App. 3d 769, 419 N.E.2d 56, and *People v. Parker* (1968), 42 Ill. 2d 42, 245 N.E.2d 487. The holding of those two cases was based on *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. *Aguilar* and *Spinelli* were interpreted to impose a "two-pronged test" which required a magistrate to assess an informant's statements regarding how he learned the information and also required an evaluation of either the informant's past record of truthfulness or facts indicating that the present information was reliable.

In *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, the United States Supreme Court replaced the two-pronged test with the "totality-of-circumstances" approach. Our supreme court adopted the totality-of-circumstances test in *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147. Consequently, we do not believe the cases cited by the defendant which predated *Gates* are persuasive.

The defendant has also asked us to compare this case with *People v. Helms* (1978), 67 Ill. App. 3d 729, 385 N.E.2d 127, in which the informant had been used by police officers on four previous occasions resulting in three arrests and three convictions. We could, of course, compare this case with many cases other than *People v. Helms* which would show stronger grounds for the issuance of a warrant than those present in this case. It is indeed a rare case that could not be supported by stronger evidence. However, whether the evidence could be stronger is not the issue; the issue is whether it was strong enough. In our judgment the evidence supporting a finding of reasonable grounds or probable cause was strong enough.

We conclude that we may not substitute our judgment for that of the trial judge, who found that the officer had probable cause to arrest the defendant; and that the judge did not err in denying the motion to suppress the defendant's confessions.

■ The defendant's next argument is that his convictions of felony murder and attempted armed robbery should be reversed because, he maintains, there is no evidence independent of his confession tending to prove an attempted armed robbery. The State concedes that, in order to sustain a conviction based upon a confession, the confession must be corroborated. (*People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861.) In *Willingham* the court quoted from *People v. Perfecto* (1962), 26 Ill. 2d 228, 229, 186 N.E.2d 258, 259:

"The true rule is that if there is evidence of corroborating cir-

cumstances which tend to prove the *corpus delicti and* correspond with the circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved in a given case. [Citation.] The same evidence may be used to prove both the existence of the crime and the guilt of the defendant, the test being whether the whole evidence proves the facts that a crime was committed and that the accused committed it. [Citations.]" (Emphasis in *Willingham* opinion.) *Willingham*, 89 Ill. 2d at 359-60.

In addition to the confession, the court heard the testimony of George Monk and Jeanne Rodriguez. Monk testified that he lived at 1656 N. Francisco across the street from the scene of the killing of Soto. Monk was watching television in his living room shortly before 1 a.m. on April 28. A flash and then a shot made him look out the window. He saw two men across the street; one of the men was shooting a gun and the other was "getting shot." He heard three more shots. One man fell, and the other man ran down the street into the gangway at 1655 North Francisco. He opened the gangway gate and ran into the alley. Monk saw only two persons in the street.

Jeanne Rodriguez testified that she lived at 1653 North Francisco. She went to bed about 12:50 a.m. She heard four gunshots and then heard a gate open at the side of her house. She looked out the window and saw somebody running through the gangway toward the alley. She later identified Walter Godinez in a lineup as the man she saw running through the gangway.

The defendant's typewritten and signed confession given to an assistant State's Attorney is, in substance, as follows:

On April 26 the defendant met Godinez at Artesian and Wabansia, and they walked to California and Wabansia where they saw a Mexican pushing an ice cream cart. Wally said, "Let's go over here, see if we can rob this Mexican." Wally went up to the Mexican and tried to rob him. The defendant was watching for the police. Wally tried to grab the Mexican and asked him for his money. The Mexican said, "I ain't got no money" and pulled out a knife. Wally ran and told the Mexican, "I'm going to get you."

On April 28 at about 12:55 a.m. Wally pointed out the Mexican as he exited a bus at California and Wabansia. Upon seeing the Mexican, Wally said, "Remember that Mexican right there? Look what I got for him." Wally pulled a .38 caliber revolver from his waistband. The defendant asked Wally where he got the gun, and Wally told him not to worry about it. Wally told him that the gun was loaded, and the

defendant saw six bullets in the cylinder. Wally told the defendant that he was going to rob the Mexican; and the defendant was supposed to look out for the police. From California and Wabansia, Godinez and the defendant went through a gangway to Mozart and Wabansia. At Mozart, Wally grabbed the Mexican from the back. The Mexican pushed away and started running; and Wally chased him, grabbed him, pulled out his gun and shot him. The defendant ran, and as he was running, he heard two or three more shots.

The defendant made some corrections on the typewritten statement. Where the statement said, "We tried to rob the guy," the defendant changed "we" to "Wally." A typewritten question read, "When you say the Mexican, was it the same Mexican you tried to rob earlier?" The defendant changed "you" to "Wally."

■ It is our judgment that the evidence independent of the confession sufficiently corroborated the defendant's confession of attempted armed robbery. It is true, as the defendant argues, that the testimony of Monk and Rodriguez does not establish an attempted armed robbery. But it is also true that evidence that a man was shot to death on a city street at 1 o'clock in the morning and that the shooter fled *tends* to establish armed robbery or an attempted armed robbery. There are other possibilities, of course. There could have been a dispute between two persons, for example. But the rule does not require that the independent evidence establish the crime beyond a reasonable doubt. *Perfecto*, 26 Ill. 2d at 229.

The defendant relies principally on *People v. Kokoraleis* (1986), 149 Ill. App. 3d 1000, 501 N.E.2d 207, in which the defendant was convicted of murder and rape. The victim's decomposed body was found five months after she had been abducted. The defendant confessed to participation in both crimes with others, but he himself denied having intercourse with the victim. The victim's pants were split along the inseam from the back to the front along the crotch. The appellate court held that that evidence was insufficient proof independent of the confession to sustain the rape conviction. We confess that we have difficulty reconciling the holding of *People v. Kokoraleis* with that of *People v. Perfecto* (1962), 26 Ill. 2d 228, 186 N.E.2d 258, even after reading the *Kokoraleis* court's attempt to distinguish *Perfecto*.

In *Perfecto* the defendant was convicted of the rape of a 75-year-old victim. The only proof of penetration was the defendant's confession. The supreme court affirmed the conviction, saying this:

> "Here we have an abundance of evidence corroborating the 32-year-old defendant's statements and confessions in which he related visiting the room of his 75-year-old victim twice on the

evening in question, beating her into insensibility when she resisted his advances and having intercourse with her. Independent confirmation of these facts is found in the testimony of the witness Quintella, an acquaintance of defendant who stopped in defendant's hotel room for a drink about the time the offense was committed. Quintella testified defendant left the room and returned later holding a handkerchief to his face. Subsequently the witness left the room and returned to find defendant again gone. Quintella then went to the washroom and noticed the lights in the victim's room go on and off and the door shake. He stood in the hallway watching the door and saw defendant come out a short time later. This witness saw scratches on defendant's left shoulder, and a bite on his right shoulder. There was a red smear on the wall of the room where the offense occurred, papers all over the floor and blood was flowing from the victim when she was removed on a stretcher. She was badly bruised and had a broken collar-bone.

The evidence here, taken as a whole, leaves no doubt that a rape was committed and that defendant committed it." *Perfecto*, 26 Ill. 2d at 229-30.

The independent evidence in *Perfecto* established an aggravated battery, but we do not believe it tended to establish a rape to any greater degree than did the independent evidence in *Kokoraleis*. However, we need express neither agreement nor disagreement with the holding of *Kokoraleis* because we conclude that the corroborating evidence in this case is stronger than the evidence in *Kokoraleis* and is similar to the corroborating evidence in *Perfecto*. The State established that Soto had been shot three times with a .38 caliber weapon and that the shooter fled. A witness identified Godinez as the shooter. These independent facts corroborated the defendant's statement that Godinez was the shooter, that he had used a .38 caliber revolver, that he had fired at least three shots and that he fled.

There is one other aspect of the *Kokoraleis* opinion that we wish to discuss lest our silence be misconstrued. In *Kokoraleis* the State had also contended that it need not have introduced independent evidence of the rape offense because the *corpus delicti* of the murder offense had been established independent of the confession. The State's argument was that once the confession was shown to be trustworthy through independent evidence of the murder the confession should be sufficient to prove the *corpus delicti* of the rape without independent corroborative evidence.

The court rejected that argument and, although conceding there

were no Illinois cases directly in point, held that each offense must be corroborated by independent evidence. In so holding the appellate court relied on *People v. Neal* (1985), 111 Ill. 2d 180, 489 N.E.2d 845, and *People v. Darnell* (1981), 94 Ill. App. 3d 830, 419 N.E.2d 384. The court noted that the supreme court had upheld convictions of murder and armed robbery in *Neal* and the appellate court had upheld convictions of murder and rape in *Darnell* on the ground that there was sufficient independent evidence of armed robbery in *Neal* and sufficient independent evidence of rape in *Darnell* to corroborate the confession. The court reasoned that the supreme court and appellate court had implicitly rejected the State's argument made in *Kokoraleis* because they could have decided the cases on the basis of the State's position that independent evidence of one offense with a corroborating confession would be sufficient to prove the *corpus delicti* of another offense without independent corroborative evidence.

We have examined the briefs in *Neal* and *Darnell* which disclose that the argument advanced by the State in *Kokoraleis* was not advanced in *Neal* or *Darnell*. Similarly, the argument was not made by the State in *People v. Davis* (1988), 173 Ill. App. 3d 300, 527 N.E.2d 552, decided by this court, which involved a murder and armed robbery and a claim that the *corpus delicti* of armed robbery had not been established. Nor has the argument been made in this court. Therefore, we wish to make it clear that our discussion of the sufficiency of independent evidence to corroborate a confession should not be construed as an implicit holding that each offense must be corroborated with independent evidence. Again, we express neither agreement nor disagreement with the holding of *Kokoraleis* because the question is not before us.

The defendant next contends that the evidence failed to establish his guilt on the basis of accountability. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2).) We disagree. In both his oral and written confessions, the defendant said that he knew that Godinez intended to rob Soto two days before the shooting and again on the night of the shooting. On both occasions he agreed to act as a lookout; and he knew that Godinez was armed with a revolver. Acting as a lookout is an act aiding and abetting the commission of the offense.

The defendant argues also that even if he knew Godinez intended to rob Soto, his knowledge of robbery would not make him accountable for intentional or knowing murder. The defendant's contention has been rejected by the supreme court in *People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746, in which the defendants agreed to commit the substantive offense of battery, a misdemeanor. In the course of the

commission of that offense, a murder was committed. The court affirmed the conviction of murder, adhering to the long-established "common-design rule" which provides that where two or more persons engage in a common criminal design or agreement, any acts in the furtherance of the design committed by one party are considered to be the acts of all parties to the common design and all are equally responsible for the consequences of such further acts. (*Terry*, 99 Ill. 2d at 514.) We judge that the evidence established the defendant's guilt under the accountability theory.

The defendant's last contention is that his conviction on four of the five counts must be vacated. The defendant was convicted of intentional murder (count I), knowing murder (count II), felony murder (count IV), armed violence based on murder (count III) and attempted armed robbery (count V).

■ The State argues that the defendant has waived this argument by failing to object at the time of the judge's finding or in his post-trial motion. We do not accept the State's position. At the close of the evidence the judge said simply that he found the defendant guilty in the manner and form as charged in the indictment. Although it can be argued that the pronouncement was the equivalent of the finding of guilty on each count, it can also be argued that the pronouncement could be construed in another way. Since waiver is an intentional relinquishment of a known right by word or action, we refuse to find it here. Similarly, the defendant had no way of knowing that the court would deny his post-trial motion and enter a judgment that would be construed as a judgment on all five counts. Since the defendant's post-trial motion was filed and argued before he was sentenced, any error was not waived. See *People v. Gibson* (1983), 114 Ill. App. 3d 488, 449 N.E.2d 182.

■ In *People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880, the supreme court held that where one individual is murdered, there can be only one conviction of murder and that judgment may be entered on only one count. As here, the defendant had been convicted of felony murder, knowing murder and intentional murder. The court concluded that intentional murder was the more serious offense and entered judgment on that count. We do so here. The judgment of intentional murder as charged in count I is affirmed. The judgments of knowing murder based on count II and felony murder on count IV are vacated.

■ The defendant's argument that the attempted armed robbery conviction cannot stand in light of a conviction of murder is refuted by *People v. Green* (1976), 62 Ill. 2d 146, 340 N.E.2d 9. (See also *People v. Davis* (1988), 173 Ill. App. 3d 300, 527 N.E.2d 552.) Consequently, the

judgment of conviction of attempted armed robbery based on count V is affirmed.

In *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477, the supreme court held that convictions for armed violence and its underlying felony cannot stand where a single physical act is the basis for both and that judgment should be entered and sentence imposed only on the more serious offense. Here, the underlying felony for the charge of armed violence is murder and a single physical act is the basis for both. Therefore, the conviction for armed violence based on count III is vacated.

We wish to add some observations about our vacaturs of convictions on certain counts. This case is but one of many that unnecessarily present courts of review with the same problem: the propriety of convictions and sentences in multicount indictments. We say that the problem is unnecessarily presented here because the case law is clear and the issue should be resolved in the trial court. The State understandably makes no attempt in this court to justify the convictions on all counts. Both the State and defense were aware long before trial that the indictment contained three counts of murder based on a single act and that the armed violence count was based on the act of murder. Both sides, therefore, should have been alerted to the fact that the issue would arise before sentencing and both had the obligation to call the question to the attention of the trial judge. Neither did so. In view of their silence, it is understandable that the trial judge might have concluded that his general finding of guilty on the indictment would have been in conformity with our holding here. We would hope that in the future the prosecutors or the defense attorneys will call the trial judge's attention to the question at the time of sentencing.

For these reasons the judgments of conviction on counts I and V are affirmed. The judgments of convictions on counts II, III and IV are vacated.

Judgment affirmed in part and vacated in part.

McNAMARA and LaPORTA,* JJ., concur.

---

*Justice LaPorta participated in this opinion after the resignation of Justice Quinlan, who had participated in the oral argument. Justice LaPorta has read the briefs and listened to a tape of the oral argument.