FOURTH DIVISION
 November 27, 1996
 










No. 1-95-2544

THE PEOPLE OF THE STATE OF ILLINOIS,

 Plaintiff-Appellee,

 v.

WILLIE WRIGHT,

 Defendant-Appellant.)
)
)
)
)
)
)
)
)Appeal from the
Circuit Court of
Cook County

No. 92-CR-237

Honorable
Joseph J. Urso,
Judge Presiding.



JUSTICE CAHILL delivered the opinion of the court:
 A jury found Willie Wright guilty of first degree murder and
attempted armed robbery. The trial court sentenced him to 60 years
in prison for first degree murder and 8 years for attempted armed
robbery, the sentences to run consecutively. Wright appeals. We
affirm the murder conviction but vacate the conviction for
attempted armed robbery.
 On November 20, 1991, Kahil Cuyler was beaten and shot to
death near 658 E. 81st Street in Chicago, Illinois. At Wright's
trial an eyewitness, Michella Henderson, testified that on November
20, 1996, she and her sister, while driving down 81st Street, saw
three men fighting in the street. Two men were on either side of
the third man, punching him. One of the assailants displayed a
gun. Henderson then heard a shot. The beaten man fell to the
ground. The assailants then got into a car on 81st and left the
scene. Henderson telephoned 911, told the police what had
happened, and gave the license plate number of the car. Henderson
testified that she later identified Tanzell Eaton in a line-up as
a man who strongly resembled the shooter. The line-up was held on
November 22, 1996, and included the defendant, Willie Wright. 
Henderson did not identify Wright.
 Officer Carlassare testified that while investigating the
shooting he learned that the car identified by Henderson was
registered to a Tanzell Eaton. Eaton was taken into custody
approximately 22 hours after the shooting and questioned. 
 Officer Malkowski testified at the hearing on Wright's motion
to quash arrest and suppress evidence that Eaton told police that
"two co-companions, one Mr. Willie Wright and Mr. Hampton, set out
to rob Kahil Cuyler and a struggle ensued between Mr. Wright and
Mr. Cuyler and Mr. Wright shot Mr. Cuyler in the head."
 Several police officers then went to 17 West 103rd Street to
arrest Wright. Officers knocked on the door and Wright opened it. 
The officers announced they were the police and asked Wright his
name. Wright then slammed the door. Police Sergeant Wolf knocked
on the door again. Wright's mother, Velma Wright, answered the
door. Sergeant Wolf testified that he told Mrs. Wright the police
were investigating a shooting. Officer Easter testified they told
her the police were there to talk to and arrest her son. They said
they knew Wright was there and asked if they could come in. Mrs.
Wright stepped back to let Sergeant Wolf and other officers enter. 
Six officers entered the kitchen. They had no warrant. While the
other officers searched the house, Sergeant Wolf asked Mrs. Wright
if she would sign a consent to search form. Wolf did not bring
consent forms with him. He wrote one out on a piece of paper Mrs.
Wright gave him. Mrs. Wright retrieved her glasses so she could
read the form. She then pointed out that Sergeant Wolf had
misspelled her name. After that was corrected she read and signed
the form.
 Officer Phil Paluch was one of the officers who searched the
house. He found Wright crouched in a corner of the basement crawl
space. Wright was removed at gunpoint from the basement,
handcuffed, and taken into custody.
 During the pretrial suppression hearing Mrs. Wright testified
to a different version of events. She testified that at 6:30 p.m.
on November 21st she was asleep because she works nights. She
heard a lot of banging on the side door. She went downstairs and
asked who was at the door. A voice said "police." She opened a 
security door and a plain clothed police officer showed her a
badge. One of the several police officers said they wanted to
speak with Wright. He did not say they wanted to arrest him or
search for a gun. She said she did not know if he was home because
she had been asleep. She told the police she would go downstairs
to see if her son was home but they pushed her back and came in. 
She did not give the police permission to enter and they had no
warrant. They searched the home. When she asked the police for a
warrant they said they did not need one. Two officers went
downstairs and came back with Wright in handcuffs. She testified
that at one point she went downstairs and saw one of the officers
with a knee in Wright's back and a gun at his head. She said she
never had her glasses so she never read the consent form. She was
told it was a paper stating that the police did not damage the
house. She said she did initial a correction to the spelling of
her name.
 The trial judge found the police officers more credible than
Mrs. Wright and denied Wright's motion to quash arrest and suppress
evidence.
 At trial, Detective Karl testified that he spoke to Wright
when he was in police custody. Wright told him that Eaton told
Wright and Hampton that they were going to rob Cuyler. When the
three saw Cuyler, Wright went up to him with a gun and fired it
once into the air. Wright and Cuyler then fought. Eaton joined
the fight and hit Cuyler in the face, then took the gun from Wright
and fired three times at Cuyler. The assailants then left the
scene.
 Wright first contends that the trial court erred in denying
his motion to quash arrest and suppress statements for lack of 
probable cause. 
 The State argues that Wright waived the issue because he
failed to raise probable cause arguments at the hearing. 
 We find that the issue of probable cause is not waived. The
trial court made a finding that probable cause existed based upon
the evidence he heard. There is also sufficient testimony in the
preliminary hearing transcript to permit us to address and resolve
the issue. 
 Probable cause exists when a reasonably prudent person, having
the knowledge possessed by the officer at the time of the arrest,
would believe that the defendant committed the offense. People v.
Montes, 192 Ill. App. 3d 874, 549 N.E.2d 700 (1990). 
 Officer Malkowski testified at the motion to suppress hearing
that Eaton made a statement that "two co-companions", Wright and
Hampton, set out to rob the victim, and that Wright shot the victim
in the head. Wright argues that Eaton's "co-companion" statement
is insufficient to establish probable cause to arrest Wright. 
 Wright's argument is based on the theory that Eaton's
statement should not be read to infer his presence at the crime
scene. His statement, then, would be nothing more than a remark of
an unreliable informant, and so insufficient to establish a
predicate for probable cause.
 The theory ignores what the police knew at the time Eaton made
his "co-companion" statement: that Eaton had been identified in a
line-up and placed at the scene of the crime as a perpetrator. We
agree with the State that Eaton's statement could lead a reasonably
prudent person to conclude that one co-offender, not simply an
informant, had implicated himself and another in a crime. That is
sufficient to establish probable cause to arrest the implicated
offender. People v. James, 118 Ill. 2d 214, 225, 514 N.E.2d 998
(1987). 
 Eaton's statement also corroborated the eyewitness' testimony
at trial. See People v. Braden 34 Ill. 2d 516, 216 N.E.2d 808
(1966)(the appellate court may review trial evidence as well as
evidence presented at a hearing on a motion to quash arrest and
suppress evidence when reviewing the motion). We find there was
probable cause to arrest Wright without a warrant. 
 Second, Wright argues that the State failed to prove beyond a
reasonable doubt that he was guilty of attempted armed robbery. He
contends that there was no evidence independent of his statement
that the offense was committed, a requirement under Illinois law to
establish proof of corpus delicti. 
 The State contends that evidence other than Wright's
confession exists to establish the commission of attempted armed
robbery. Alternatively, the State argues that the requirements of
corpus delicti should be clarified to allow a less stringent
standard: independent evidence need not be offense specific. 
 Corpus delicti has two components: proof of the occurrence of
the injury or loss, and causation by criminal conduct. People v.
Furby, 138 Ill. 2d 434, 563 N.E.2d (1990). Proof of corpus delicti
may not rest exclusively on a defendant's extrajudicial confession,
admission, or other statement. The defendant's statement must be
corroborated with evidence independent of the confession which
tends to show the commission of the offense. People v. Lambert,
104 Ill. 2d 375, 375, 472 N.E.2d 427 (1984); People v. Furby, 138
Ill. 2d 434, 446, 563 N.E.2d 421 (1990). 
 The State cites to People v. Montes, 192 Ill. App. 3d 874,
549 N.E.2d 700 (1990), and argues, not without reason, that the
case appears to stand for the proposition that the independent
evidence need not establish the specific elements of the offense. 
Montes, however, pre-dates the thorough discussion of the issue by
our Supreme Court in Furby. 
 The court's analysis in Furby followed traditional notions of
corpus delicti: 
 "[I]f the independent evidence tends to prove that an
 offense occurred, then such evidence, if corroborative of
 the facts contained in the confession, may be considered
 along with the confession in establishing the corpus
 delicti. In such event, the independent evidence need
 not establish beyond a reasonable doubt that an offense
 did occur." (Emphasis in original.) Furby 138 Ill. 2d
 at 446, 563, N.E.2d 421 citing People v. Willingham, 89
 Ill.2d 352, 361 (1982).
 The State would have us read this language liberally, from the
State's point of view, and find that, if the independent evidence
generally corroborates the confession, it need not rise to the
level of proof required to establish the elements of the specific
crime charged--which would be the case if no confession existed. 
Furby does not so hold. The court in Furby analyzed the
independent evidence not with an eye to whether it tended to
buttress the confession as a whole, but whether it established or
tended to establish the specific crime charged: felony theft. It
found the independent evidence to be specific enough to relate to
felony theft, and concluded that the corpus delicti had been
established.
 Here, we only have the statement attributed to Eaton in
Wright's confession, that tends to prove attempted armed robbery. 
No other evidence offered at trial, independent of Wright's
confession, establishes or tends to establish the crime of
attempted armed robbery. The eyewitness testified she told the
police that she saw three men fighting in the street, that one man
was shot, and that the others fled in a car. Nothing in this
scenario establishes or tends to establish that the assailants
intended to rob the victim. An inference of attempted armed
robbery is no more credible then an inference that a drug
transaction was involved. We find that the conviction for
attempted armed robbery must be reversed for failure to establish
proof of corpus delicti.
 Alternatively, the State asks us to relax or dispense with the
rule entirely. The State made no such request in Furby, so the
court did not address the issue. Furby, 138 Ill. 2d at 447, 563
N.E.2d 421. We decline. If our supreme court wishes to revisit
the corpus delicti rule, the State has preserved the issue in this
appeal.
 Finally, Wright argues that the trial court abused its
discretion when it imposed the maximum sentence without
consideration of a capacity for rehabilitation, the mitigation
offered by Wright, his low I.Q., the fact that the shooting was not
planned, and that he did not shoot the victim. 
 We will not disturb a sentence unless we find the trial court
abused its discretion. People v. Streit, 142 Ill.2d 13,19, 566
N.E.2d 1351 (1991).
 Before sentencing the judge explained to Wright that he
considered mitigating factors in determining the sentence. In
part, he considered Wright's statement, his mother's plea for
leniency, the extent of his involvement in the shooting, his past
job history, and that he has a daughter. There is no evidence in
the record that the trial court abused its discretion in the
sentence imposed.
 Affirmed in part and reversed in part.
 THEIS and S.M. O'BRIEN, JJ., concur.