1-95-1549

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County.
 )
 v. ) 
 ) 
PATRICK PRINCE, ) Honorable
 ) Shelvin Singer,
 Defendant-Appellant. ) Judge Presiding.


 PRESIDING JUSTICE HARTMAN delivered the opinion of the court:
 Defendant appeals his conviction for attempted armed robbery
and first-degree murder in a bench trial, raising as issues whether
(1) his motions to quash his arrest and suppress his confession
were erroneously denied; (2) the corpus delicti of his attempted
armed robbery was proved beyond a reasonable doubt; (3) his
conviction of attempted armed robbery was a lesser included offense
of felony murder; and (4) the sixty-year sentence for the murder
conviction imposed upon him was excessive.
 On August 28, 1991, Edward Porter was shot and killed as he
stood on the sidewalk at 2858 West Flournoy, near Francisco. A few
weeks later, an anonymous telephone call to police offered details
of the crime and claimed that defendant, then nineteen years old,
shot and killed Porter. On October 6, defendant confessed to the
crime and signed a written statement for police who then formally
placed him under arrest. A grand jury indicted defendant and
another man, Jeffrey Williams, charging them with four counts of
first-degree murder, one count of armed violence, one count of
attempted armed robbery, and one count of aggravated unlawful
restraint. Defendant also was charged with unlawful use of a
firearm by a felon. 
 Defendant moved to quash his arrest and suppress his
statement, arguing that the State lacked probable cause to arrest
him, and that any evidence obtained after that arrest was
inadmissible. In an amended motion to suppress the statement,
defendant asserted that police abused him, forced him to sign the
statement, and misrepresented to him that he was identified in a
lineup. 
 At the hearing on the motion to quash his arrest, defendant
testified that on the evening of October 6, while he was asleep at
his girlfriend's home, Detective Kriston Kato entered the bedroom
with his gun drawn, ordered him to get up, handcuffed him, and took
him to the police station without allowing him to get dressed. 
Defendant was placed in an interrogation room, his left hand was
handcuffed to the wall, and he was not allowed to use the bathroom
or obtain water from a fountain.
 Countervailing testimony of four police officers included that
of Detective Dennis Keane, who stated that he and his partner
investigated the August 28 shooting and learned that Juanita Reed,
who lived at the corner of Flournoy and Francisco, had been sitting
in a chair in the back yard of her home, saw the victim park a car
nearby, walk eastward on Flournoy and, a few minutes later, heard
a single noise she believed to be a gunshot. She then saw a black
male wearing a baseball jersey with matching shorts and a baseball
cap, running past her, heading west on Flournoy and then south on
Francisco. He was about nineteen or twenty years old, weighed
about one hundred sixty pounds, and had a medium complexion. She
had seen him before in the neighborhood and, after the shooting,
the gunman returned to the scene wearing different clothes. Reed
neither identified the man by name, nor did she see the actual
shooting.
 Detective Eugene Roy testified that on August 29 he and his
partner spoke with the victim's mother, who revealed that Porter
had a substance abuse problem, and normally bought his drugs at the
corner of Flournoy and Francisco. Roy and his partner returned to
that corner, spoke with area residents, passed out his business
cards and asked people to call him if they had any information
regarding the homicide. On September 7, Roy received a telephone
call from a man who refused to give his name for fear of
retaliation, but told him that defendant had committed armed
robberies of drug sellers and users near Flournoy and Francisco and
that defendant shot the victim during an attempted robbery because
the victim refused to comply with defendant's demands. The caller
stated that defendant resided at 706 South California. Roy found
a police file record of defendant living at 706 South California,
but could not locate him. 
 Detective Kato testified. On October 6, while assigned to
conduct a follow-up investigation of the Porter homicide, he spoke
with an unnamed person on a street near the site of the homicide,
who told Kato that defendant had been staying at 3047 West Flournoy
since the day of the shooting. That evening, Kato and his partner
went to that address with two police officers to find defendant. 
A woman, defendant's girlfriend, allowed them to enter. Defendant
appeared in a hallway toward the back of the apartment and agreed
to come to the police station to talk about the homicide. 
 At the station shortly after 10:00 p.m., Kato seated defendant
in an interview room. Kato left, leaving the door open and without
handcuffing defendant. He returned after about five minutes,
carrying reports of the homicide investigation. Kato and his
partner advised defendant of his Miranda rights. Defendant then
told the detectives that he was near the scene of the crime at the
time of the shooting. After hearing gunshots, defendant ran over
to the victim, where he heard people saying that another man named
Jeffrey attempted to rob the victim and shot him in the process. 
Defendant gave Kato a physical description of Jeffrey and suggested
possible locations where Jeffrey could be found. Kato then left in
search of Jeffrey. He told defendant that he would leave the door
to the interview room open, but that another officer might shut the
door to prevent other investigations from being interrupted. Kato
also told defendant that he could go to the bathroom or water
fountain. 
 Kato returned to the station after about an hour, spoke with
defendant to obtain more information about Jeffrey, learned the
suspect's last name was Williams, and left again to look for him. 
By now it was 1:00 a.m. on October 7. Kato brought Juanita Reed to
the police station to view a lineup, but she could not identify
anyone, including defendant. Kato left again to look for Williams,
and returned to the police station about an hour later, now at 4:00
a.m. Kato, unable to find Williams, asked defendant if he knew of
any other place where Williams could be found. This time defendant
responded that Kato did not have to look for Williams anymore,
because defendant himself accidentally shot the victim. Kato then
arrested defendant. 
 Police Officer Paul Sarpalius testified that on October 6, he,
his partner, and two detectives went to 3047 West Flournoy to find
defendant. Sarpalius and his partner covered the side and rear
exits to the house as the two detectives knocked on the front door. 
Once the detectives were allowed in the home, Sarpalius and his
partner went to the front of the home. Sarpalius saw defendant
sitting on a couch in the front room, without handcuffs. A
detective asked defendant about the shooting and, after defendant
responded in the affirmative, the detective asked defendant to come
down to the police station to make a statement. Defendant agreed. 
The officers and detectives returned to the station with defendant. 
The detectives took defendant to an interview room, later exited
the room, leaving the door open, and told Sarpalius they planned to
look for a suspect named Jeffrey. Sarpalius allowed defendant to
go to the water fountain. 
 Michael Harris, a second floor resident at 3047 West Flournoy,
testified on rebuttal for defendant that on October 6 at 10:00
p.m., a police officer pushed in his front door, told him and a
friend to get up and get dressed, took the two men downstairs and
placed them in a police car. As he walked downstairs, Harris saw
defendant coming out of the first-floor apartment with his
girlfriend, Detective Kato, and other police officers. Defendant
also was being brought to the police station, and was handcuffed. 
On redirect examination, Harris testified that he saw the handcuffs
as defendant left his girlfriend's apartment, but on cross
examination, Harris stated that he saw the handcuffs when defendant
got into the police car. Harris stayed at the station for several
hours, during which time he was placed in a lineup. 
 Officer Sarpalius testified a second time to rebut Harris'
testimony, whom he recognized from the lineup in which defendant
was also present. Sarpalius asserted that he and his partner had
picked up Harris and another man on the street, asked them to
participate in a lineup, and offered to give them a ride back to
their homes or wherever else they wanted to go afterwards. The two
men were not handcuffed. 
 The circuit court denied defendant's motion to quash his
arrest, found that based upon the totality of the circumstances,
the police had probable cause to believe that defendant was
involved in the murder, determined that the State's witnesses were
more credible than defendant's, did not believe defendant's
testimony that he was sleeping in his bedroom when the police
arrived, and noted that both defendant and Harris were convicted
felons, defendant having served time for armed robbery, and Harris
currently serving time for robbery. Harris also had a previous
conviction for possession of a controlled substance. 
 The circuit court next concluded that defendant was not in
custody when he went with the officers to the police station and
remained there for several hours, until he made the confession and
was then arrested.
 At the hearing on the motion to suppress defendant's
confession, Assistant State's Attorney Domenica Stephenson
testified that on the morning of October 7, 1991, she took
defendant's confession concerning Edward Porter's murder. 
Defendant was not handcuffed and told Stephenson that he had been
treated well by the police. Defendant told her the police informed
him that a witness identified him in the lineup. She never heard
a police officer tell defendant he had been identified in the
lineup. Detective Kato also testified that defendant was not
handcuffed until he gave Stephenson his statement, and just before
he was taken to the lock-up.
 The circuit court denied defendant's motion to suppress the
confession. Defendant and Williams thereafter were tried as
codefendants in a bench trial, although the court severed their
cases. The Williams appeal has been considered separately in
Docket No. 1-95-0311, in an unpublished Supreme Court Rule 23
order. Official Reports Advance Sheet No. 15 (July 20, 1994),
R.23, eff. July 1, 1994.
 At trial, Reed testified substantially as she had at the
suppression hearings. 
 Alvin Weems, a Chicago police officer, testified that on
August 28, after the police department received a call regarding
the shooting, he and his partner went to the scene of the homicide
at Flournoy and Francisco and called for an ambulance. Area
residents informed the officers that the victim had gotten out of
a nearby car before he was shot. The officers learned that the car
was registered to Edward Porter.
 Detective Kato also testified. He brought defendant to the
police station, where he eventually confessed to killing Edward
Porter. Kato read defendant's confession into evidence, which
stated that at 1:00 a.m. on August 28, 1991, defendant watched
Porter purchase some cocaine, and decided to rob him of that
cocaine. He borrowed Jeffrey Williams' .38 caliber gun, walked up
to Porter and ordered him to hand over the drugs. Porter refused,
and defendant pulled out the gun and pointed it at Porter's chest
and stomach. The gun was already cocked, which defendant did not
realize and, when his finger touched the trigger, the gun went off. 
Defendant ran to his girlfriend's house and threw the gun into a
garbage can. 
 Darren Ray testified for defendant. Ray previously had been
convicted of three drug-related crimes. On August 28, 1991, he was
sitting on the porch of his home, located one block west of the
corner of Flournoy and Francisco, when he heard gun shots, did not
see the shooting, walked to the scene and saw Porter lying on the
ground. As he walked away, he saw defendant coming toward him with
a friend named Cory. Defendant asked Ray what happened, and walked
toward Porter's body. After viewing the body, defendant and Cory
walked away. 
 Defendant testified and denied shooting Porter. At the time
of the shooting, defendant was standing outside with some friends
a few blocks away from the corner of Flournoy and Francisco. 
Defendant heard the gunshots, went with a friend named Cory to the
scene, saw Porter's body, and returned home.
 Defendant asserted that Detective Kato forced him to sign the
statement confessing the crime by threatening physical harm. 
Defendant had heard other people talk about Kato using force to
coerce people into signing confessions, and Kato also used force on
him, hitting him twelve times. After defendant was placed in the
lineup, Kato told defendant he had been identified as the
perpetrator. Defendant told Stephenson, the assistant State's
Attorney, that he'd been beaten, but she didn't believe him. 
Defendant then signed the statement.
 On cross-examination, defendant acknowledged that he sustained
no visible injuries, he was never treated at the jail's hospital
for any injuries he might have suffered, and he did not exhibit any
scars resulting from the alleged beating.
 On rebuttal, Stephenson testified that defendant told her he
was treated well by police, and never mentioned being threatened or
hit by Kato. Kato also testified in rebuttal that he never struck
or threatened defendant.
 The State also introduced evidence showing that the victim was
admitted to the hospital on August 28 and a discharged bullet
recovered from his body was identified as a .38 caliber special. 
An autopsy concluded that defendant died from a bullet wound that
entered his lower chest area.
 The circuit court found defendant guilty of felony murder and
attempted armed robbery after making extensive findings, based on
the evidence, as follows: defendant's confession was accurate and
truthful; portions of the statement were corroborated by other
uncontroverted evidence in the case, specifically evidence that the
victim was shot in the stomach and that the bullet that killed him
was a .38 caliber, the same type of gun defendant said he used;
defendant was not coerced into signing the statement, noting that
the six or seven hours defendant spent at the police station was
not significant; defendant actively participated in the preparation
of the statement, including several insertions defendant made and
initialled, and one such insertion was in regard to the type of gun
used; defendant failed to introduce any objective evidence of Kato
mistreating him; and Ray's testimony supported the State's case
although he testified for defendant, because he placed defendant
near the scene of the crime a few minutes after the crime was
committed.
 Defendant unsuccessfully moved for a new trial. At a
presentencing hearing, the circuit court noted that defendant was
eligible for the death penalty. The State presented in aggravation
defendant's previous armed robbery conviction, and noted that
defendant committed the murder for the sole purpose of monetary
gain. In mitigation, defendant asserted that he accidentally shot
the victim, and his actions were not premeditated or intentional. 
The court observed several other mitigating factors, such as his
mother having abandoned him, his young age at the time he committed
the crime, and the fact that he took job training classes. The
court then sentenced defendant to sixty years in prison on the
murder count and twenty-five years on the attempted armed robbery
count. Defendant appeals. 
 I
 Defendant assigns error in the circuit court's denial of his
motions to quash his arrest and suppress his statement because the
police did not have probable cause to arrest him, and his
confession resulted from the illegal arrest. 
 The parties presented conflicting witness evidence regarding
the voluntary nature of defendant's detention at police
headquarters. The circuit court was required to weigh and decide
the credibility of the witnesses, and its ruling on a motion to
quash an arrest will not be disturbed unless manifestly erroneous. 
People v. Redd, 135 Ill. 2d 252, 268, 553 N.E.2d 316 (1990); People
v. McClellan, 232 Ill. App. 3d 990, 999, 600 N.E.2d 407 (1992)
(McClellan). 
 To determine whether a person has been arrested, a court must
decide whether, under the circumstances presented, a reasonable
person would have believed that he was not free to leave. Michigan
v. Chesternut, 486 U.S. 567, 573, 100 L. Ed. 2d 565, 108 S. Ct.
1975, 1979 (1988); United States v. Mendenhall, 446 U.S. 544, 554,
64 L. Ed. 2d 497, 100 S. Ct. 1870, 1877 (1980). When detained for
custodial interrogation, one is not free to leave, and the
detention must be supported by probable cause. Dunaway v. New
York, 442 U.S. 200, 214, 60 L. Ed. 2d 824, 99 S. Ct. 2248, 2257
(1979); People v. Sturdivant, 99 Ill. App. 3d 370, 372, 425 N.E.2d
1046 (1981). Not every interrogation held at a police station,
however, is custodial. People v. Holmes, 198 Ill. App. 3d 766,
774, 556 N.E.2d 539 (1989); People v. Davis, 142 Ill. App. 3d 630,
636, 491 N.E.2d 1285 (1986).
 To decide whether an accused has been detained, the court must
consider several factors, including: (1) the time, place, length,
mood and mode of the interrogation; (2) the number of police
officers present; (3) whether defendant's friends or family are
present; (4) whether the police took steps involved in a formal
arrest procedure, such as using physical restraint, making a show
of weapons or force, booking or fingerprinting; (5) the extent of
the officers' knowledge, their intent, and the focus of their
investigation; (6) the manner in which the individual went to the
place of interrogation; and (7) whether defendant was told he was
free to leave. People v. Reynolds, 257 Ill. App. 3d 792, 799, 629
N.E.2d 559 (1994); People v. Gordon, 198 Ill. App. 3d 791, 796, 556
N.E.2d 573 (1990). Courts must examine the totality of
circumstances to determine whether an arrest has been made. 
McClellan, 232 Ill. App. 3d at 999.
 Defendant in the case sub judice spent a long time in the
interview room at the police station. The length of an
interrogation alone, however, does not conclusively establish
whether defendant was illegally detained at the police station. 
People v. Perez, 225 Ill. App. 3d 54, 65, 587 N.E.2d 501 (1992). 
Here, defendant's stay at the police station resulted from the
hours spent by police looking for another suspect, Jeffrey
Williams, suggested by defendant himself at the station. Defendant
stayed at the police station, then, not only to answer questions
about his personal knowledge of the crime, but to help police by
telling them where that possible suspect could be found and, if
possible, to identify the man at the station once the officers
found him. 
 Other factors present in this case support the circuit court's
conclusion that defendant voluntarily accompanied the officers to
the police station. Evidence was adduced that the detectives
entered the home of defendant's girlfriend after she consented, the
detectives did not handcuff or restrain defendant or exhibit any
weapons, and defendant agreed to accompany the detectives to the
police station. The foregoing facts are similar to those of
McClellan, where the circuit court's ruling that defendant was not
arrested at his home was found not manifestly erroneous because
defendant's grandmother consented to their entering the home,
defendant agreed to go to the police station to answer some
questions, and defendant was not physically restrained or
handcuffed, despite defendant's contentions that the police
physically coerced him into signing a confession. McClellan, 232
Ill. App. 3d at 995, 1000. Similarly, in this case, the court's
ruling that defendant was not in custody when he agreed to go to
the police station was not manifestly erroneous. 
 Cases cited by defendant are distinguishable. In People v.
Avery, 180 Ill. App. 3d 146, 534 N.E.2d 1296 (1989) (Avery),
defendant was taken to the police station for questioning without
being searched or handcuffed. The police arrest report, however,
stated that defendant was arrested at his home. Also, defendant
was placed in an interview room alone and separate from two friends
who were being questioned, and was repeatedly confronted by police
during the interrogation about inconsistencies in statements made
by him and his friends. Avery, 180 Ill. App. 3d at 150-51. In
People v. Beamon, 213 Ill. App. 3d 410, 572 N.E.2d 1011 (1991)
(Beamon), defendant accompanied officers to the police station
after police made a "show of force" by placing several officers
outside the home with instructions to arrest anyone who tried to
leave the home, arguing with defendant's mother, and rousing
defendant from his bed in his bedroom. Beamon, 213 Ill. App. 3d at
426. 
 In the present case, the testimony of the police detectives,
which the circuit court found to be credible, reveals that they
gave defendant no indication that he was not free to leave. Kato
asked defendant if he would come to the police station, located
less than one-half mile away, to give them information regarding
Porter's homicide. At the police station, defendant gave police
the name of a possible suspect, Williams, and stayed at the station
in an interview room with the door open while the police looked for
the suspect. Unlike Avery, the police in this case never indicated
that defendant was a suspect, and never repeatedly confronted him
regarding his personal involvement in the crime. In contrast to
Beamon, the police here did not make a "show of force" by planning
to arrest anyone who tried to leave the home, or by arguing with
members of defendant's family.
 Assuming, arguendo, that defendant had been detained at his
girlfriend's home, evidence already obtained by police provided
them with sufficient probable cause to take defendant into custody. 
A warrantless arrest may be conducted by police if they have
probable cause to believe that the person to be arrested has
committed or is committing an offense. 725 ILCS 5/107-2(1)(c)
(West 1992); People v. Smith, 222 Ill. App. 3d 473, 478, 584 N.E.2d
211 (1991). Probable cause is found "when a reasonable and prudent
person in possession of the knowledge of facts and circumstances
known to the officer at the time of the arrest would believe that
the suspect had committed the offense." Smith, 222 Ill. App. 3d at
478. See also Illinois v. Gates, 462 U.S. 213, 230-31, 76 L. Ed.
2d 527, 103 S. Ct. 2317, 2328 (1983). Although mere suspicion by
the officer is not enough to justify a warrantless arrest, neither
is evidence sufficient to convict required. Smith, 222 Ill. App.
3d at 478. In addition, probable cause may be founded upon
evidence that would not be admissible at trial. People v. Hoover,
250 Ill. App. 3d 338, 348, 620 N.E.2d 1152 (1993). 
 Before contacting defendant here, the State possessed two key
pieces of evidence: Reed's depiction of a man running past her
shortly after the shooting, and an anonymous phone call implicating
defendant and offering details of the crime. The State concedes
that Reed's portrayal alone may not establish probable cause,
because her description of the man as being nineteen or twenty
years old, of medium height, medium weight, and medium complexion,
not only fit defendant, but also could match the description of
many other men. Considering all the facts and circumstances,
however, Reed's description, taken together with details provided
by the anonymous tip previously set forth, provided police with
enough evidence to establish probable cause.
 In cases where probable cause is based on information obtained
by an informant, factors such as the veracity and reliability of
the information, as well as the informant's basis of knowledge must
be examined. Gates, 462 U.S. at 231; People v. Adams, 131 Ill. 2d
387, 398, 546 N.E.2d 561 (1989). If the informant is unknown, an
independent showing of reliability is required because of the
obvious risk of misrepresentation or outright fabrication. People
v. James, 118 Ill. 2d 214, 223, 514 N.E.2d 998 (1987).
 In the case sub judice, the police independently corroborated
several details given them by the anonymous caller. The caller
told a detective that after the victim purchased some drugs,
defendant attempted to rob him at gunpoint, and defendant shot the
victim when he refused to comply with defendant's demands. The
caller further stated that defendant lived at 706 South California. 
The police had already learned from the victim's mother that the
victim had a substance abuse problem and that, when he purchased
drugs, he went to the corner of Flournoy and Francisco, the exact
location where he was killed. The police also identified
defendant's name in their files and found that he resided at 706
South California. The information obtained independently by police
confirmed information given them by the caller and established the
overall reliability of the caller's tip. The police therefore had
probable cause to arrest defendant. Because defendant's confession
did not result from an illegal arrest, the circuit court properly
denied defendant's motion for its suppression. Defendant also
contends that before he confessed, the police lied to him by
telling him he was identified in a lineup, although the witness who
viewed the lineup, Reed, identified no one. One of the State's
witnesses, Stephenson, testified that although defendant told her
police informed him that he was identified in the lineup, she heard
no officers so inform him. Defendant did not question Stephenson
about this testimony on cross-examination, and introduced no other
evidence in this regard. The circuit court, as the trier of fact,
was in the best position to decide the weight and credibility to be
given this testimony. 
 Considering all the evidence, the court's denial of the motion
to suppress the confession was not manifestly erroneous. 
 II
 Defendant next disputes the circuit court's finding that
defendant was guilty of attempted armed robbery and felony murder,
asserting that evidence presented at trial was insufficient to
corroborate his confession with regard to the attempted armed
robbery charge and, in fact, there was no evidence to show that the
offense of attempted armed robbery occurred. Although we direct
the circuit court to vacate defendant's conviction and sentence for
the attempted armed robbery charge under Point III of this opinion
because it is a lesser included offense of felony murder,
defendant's contention that this charge lacked evidentiary support
must be considered since it impinged upon the court's sentencing,
as noted in Point IV of this opinion.
 A conviction based on a confession will be upheld where
evidence corroborating the confession is produced. Corroboration
may be satisfied by proof of the corpus delicti. People v.
Willingham, 89 Ill. 2d 352, 359, 432 N.E.2d 861 (1982). To prove
the corpus delicti, the State must prove both injury or loss and
criminal agency. People v. Dalton, 91 Ill. 2d 22, 29, 434 N.E.2d
1127 (1982). Some independent or corroborating evidence outside of
the confession, that tends to establish that a crime occurred, must
be shown (People v. Lambert, 104 Ill. 2d 375, 378-79, 472 N.E.2d
427 (1984); Willingham, 89 Ill. 2d at 359), but does not have to
establish independently the offense beyond a reasonable doubt. 
People v. Howard, 147 Ill. 2d 103, 128, 588 N.E.2d 1044 (1991)
(Howard).
 In Howard, defendant confessed to murdering the victim and, in
a signed written statement, he admitted borrowing a gun from a
friend in order to rob someone, approaching a parked car containing
two people whom he planned to rob, and asking the driver for a
cigarette and a light. When the driver reached into his pocket,
defendant thought he was reaching for a gun and shot him. 147 Ill.
2d at 120. The other, unharmed occupant in the car identified
defendant as the shooter and testified at trial that defendant
walked up to their car and shot the driver when the driver refused
to give him a match. 147 Ill. 2d at 118. This witness's
testimony, along with other physical evidence, was found to have
corroborated defendant's confession sufficiently, and established
the corpus delicti of the attempted armed robbery charge. 147 Ill.
2d at 127.
 In People v. Montes, 192 Ill. App. 3d 874, 876, 549 N.E.2d 700
(1989) (Montes), the victim was shot at close range at 1:00 a.m. on
a city sidewalk. Defendant there confessed to serving as a lookout
as another man attempted to rob the victim and then shot him. 
Other witnesses testified at trial that they either saw or heard
the shooting. 192 Ill. App. 3d at 880. The court held that the
evidence independent of the confession sufficiently corroborated
defendant's confession of attempted armed robbery, acknowledging
that the other testimony did not establish an attempted armed
robbery, but reasoning that evidence of a man having been shot to
death at one o'clock in the morning, with the shooter fleeing,
tended to establish the crime of attempted armed robbery. 192 Ill.
App. 3d at 881.
 In both Howard and Montes, the courts held that the State
established the corpus delicti for attempted armed robbery when
each defendant confessed to the crimes of both robbery and murder,
although the independent evidence directly corroborated only the
portions of the confession relating to the murder charge. Their
holdings are consistent with the purpose for requiring independent
evidence that corroborates defendant's confession, which is to
ensure that the confession itself is reliable. Requiring the
introduction of evidence that corroborates a confession guards
against the possibility that defendant was coerced into signing a
false confession, or that for some reason defendant confessed to a
crime that he did not commit. Dalton, 91 Ill. 2d at 29.
 In People v. Wright, ___ Ill. App. 3d ___, ___ N.E.2d ___
(1997), cited by defendant, the defendant's conviction for first-
degree murder was upheld, but his conviction for attempted armed
robbery was reversed because the only evidence at trial tending to
prove defendant's attempt to commit armed robbery came from
defendant's own confession. The facts previously set forth in the
present case, gleaned from circumstances outside the confession,
satisfy the requirement of Howard, in that evidence independent of
the confession tended to show the commission of attempted armed
robbery and corroborated defendant's confession in this regard.
 Defendant cites three other cases in support of his argument,
each distinguishable, of which two do not even address the corpus
delicti issue. People v. Land, 169 Ill. App. 3d 342, 377 N.E.2d
824 (1988); People v. Falkner, 61 Ill. App. 3d 84, 377 N.E.2d 824
(1978). In People v. Kokoraleis, 149 Ill. App. 3d 1000, 1031, 501
N.E.2d 207 (1986), defendant was convicted of rape and murder. The
court held that the State failed to introduce enough evidence to
corroborate defendant's confession to the rape charge, making it
distinguishable from the present case. There, the State introduced
no evidence that tended to establish the crime of rape, casting
doubt on the reliability of defendant's confession. 
 As it did in Wright, the State proposes here that this court
dispense with the corpus delicti rule. In People v. Furby, 138
Ill. 2d 434, 563 N.E.2d 421 (1990), the supreme court noted that
the value of the rule has been questioned, but refused to address
the issue because the State did not raise it. We must await a
supreme court ruling in this regard. 
 There was sufficient evidence tending to corroborate
defendant's confession as to the attempted armed robbery charge and
the circuit court did not err in so finding. 
 III
 Defendant asserts that his conviction and sentence for
attempted armed robbery must be vacated because it is a lesser
included offense of the crime of felony murder. The State concedes
that the circuit court erroneously convicted and sentenced
defendant on the attempted armed robbery count, and does not oppose
defendant's request to vacate his conviction and sentence for that
offense. We agree, and that conviction and sentence must be
vacated. People v. Washington, 272 Ill. App. 3d 913, 919-20, 651
N.E.2d 625 (1995); People v. Cardona, 240 Ill. App. 3d 110, 126,
608 N.E.2d 81 (1993). 
 IV
 Defendant lastly contends the circuit court erred in
excessively sentencing him to sixty years for the felony murder
conviction, because the shooting was accidental and the attempted
armed robbery offense was improperly considered as an aggravating
factor.
 When contemplating a sentence, a circuit court must consider
the rehabilitation of defendant and the seriousness of the offense. 
People v. Young, 124 Ill. 2d 147, 156, 529 N.E.2d 497 (1988). 
Sentencing is a matter within the circuit court's discretion and
that determination will not be overturned absent abuse. People v.
Caballero, 237 Ill. App. 3d 797, 810, 604 N.E.2d 1028 (1992). A
circuit court is presumed to know the law and apply it properly,
and its decision regarding sentencing is entitled to great
deference and weight; defendant therefore must show affirmative
error. People v. Askew, 273 Ill. App. 3d 798, 805, 652 N.E.2d 1041
(1995).
 Defendant proposes that the circuit court erroneously believed
that defendant was eligible for the death penalty, which it took
into consideration in deciding the appropriate sentence. He
contends that he was not eligible for the death penalty because the
shooting was accidental, and the death penalty statute requires
that defendant intended to kill the victim. The statute cited by
defendant has been amended, however, and no longer requires that
under all circumstances, defendant intended to kill the victim when
he committed the felony. 
 The previous death penalty statute provided that a defendant
could be sentenced to death if the murder occurred in the course of
another felony, the victim "was actually killed by the defendant
*** and (b) the defendant killed the murdered individual
intentionally or with the knowledge that the acts which caused the
death created a strong probability of death or great bodily harm." 
Ill. Rev. Stat. 1979, ch. 38, par. 9-1(b)(6). A defendant was not
eligible for the death penalty under this provision unless, while
committing a felony, he intentionally killed the victim. People v.
Mack, 167 Ill. 2d 525, 533, 658 N.E.2d 437 (1995). 
 The amended version of this statute eliminates the requirement
of a mental state. The statute now provides that a defendant who
is convicted of felony murder is eligible for the death penalty if
"(a) the murdered individual: (i) was actually killed by the
defendant, or (ii) received physical injuries personally inflicted
by the defendant substantially contemporaneously with physical
injuries caused by one or more persons ***" 720 ILCS 5/9-
1(b)(6)(a)(i), (ii) (West 1992) (amended by P.A. 82-1025, eff.
December 15, 1982). The requirement that defendant acted with the
intent to kill applies only to circumstances occurring under
subparagraph (a)(ii). 720 ILCS 5/9-1(b)(6)(b) (West 1992).
 In this case, subparagraph (a)(i) applies, in that defendant
actually killed the victim when he attempted to commit a felony. 
The mental state requirement does not apply to these circumstances,
and defendant's lack of intent to kill did not preclude him from
being eligible for the death penalty. The circuit court did not
abuse its discretion in considering this factor.
 The record shows that the circuit court properly considered
several mitigating factors, including defendant's young age at the
time he committed the crime, his mother abandoning him at a young
age, and his efforts to join a job training program. As stated
above, the State proved defendant guilty of attempted armed robbery
beyond a reasonable doubt, which the court could consider as an
aggravating factor when issuing the sentence. Defendant's
rehabilitative prospects, his youth, the nature of the crime,
protection of the public, deterrence, and punishment are all
relevant factors to consider during sentencing. People v.
Whitehead, 171 Ill. App. 3d 900, 908, 525 N.E.2d 1084 (1988). 
After considering these factors, the court chose not to sentence
defendant to death and, instead, sentenced him to sixty years in
prison. Defendant has failed to show that the court committed any
errors during sentencing. His sentence of sixty years imprisonment
therefore must be upheld.
 For the foregoing reasons, defendant's conviction for first-
degree murder, based upon his commission of an underlying felony,
attempted armed robbery, must be affirmed. Because his conviction
for attempted armed robbery is a lesser included offense, that
conviction and the subsequent sentence must be vacated and this
cause remanded to the circuit court for that purpose.
 Affirmed in part, vacated in part and remanded with
directions.
 HOURIHANE and SOUTH, JJ., concur.