THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDWARD SMITH, Defendant-Appellant.

First District (4th Division)   No. 1—88—0446

Opinion filed November 21, 1991.

474

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William Pistorius, and John Wilk, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant was found guilty of four counts of aggravated criminal sexual assault and aggravated kidnapping. He was sentenced to an extended term of 60 years for aggravated criminal sexual assault, to be served consecutively to the sentence imposed on another conviction of aggravated criminal sexual assault. (See *People v. Smith* (1990), 199 Ill. App. 3d 839, 557 N.E.2d 596.) He was

also sentenced to a concurrent term of seven years on a conviction for escape from custody pending trial.

On appeal, defendant contends that his lineup identifications and subsequent inculpatory statement should have been suppressed as the fruit of an unlawful detention in violation of his fourth amendment rights; that the statement should also have been suppressed because his fifth amendment right to counsel was violated; that the trial court improperly allowed irrelevant and prejudicial evidence of other crimes; and that the cumulative effect of prosecutorial misconduct in closing argument denied him a fair trial.

In December 1985, defendant moved to suppress his post-arrest statement and the lineup identifications on the grounds that the statement was involuntary and the lineups were suggestive. Following a hearing, the motions were denied. In August 1987, defendant filed a petition for rehearing of the earlier-denied motions asserting ineffective assistance of counsel at the hearings. The trial court reviewed the transcript of the 1985 hearing and denied the petition.

Defendant also filed a motion to quash his arrest and suppress evidence on the ground that he was arrested and detained without probable cause. Evidence presented indicated that defendant and his codefendant, Sandra Gicla, were arrested at approximately 8 p.m. on March 4, 1985, by Officer Siwek and his partner. The officers were conducting a drug surveillance on a street on the southwest side of Chicago when they noticed a car pass which they believed had been reported stolen. The car was occupied by defendant and Gicla. They followed the car until they received confirmation from the police dispatcher that it was a stolen car. The officers then curbed the vehicle, advised defendant and Gicla of their *Miranda* rights, and placed them under arrest. The officers recovered a wallet which did not belong to defendant or Gicla from the back seat of the car. During a later inventory of the car, a large plastic bag filled with stolen purses and wallets was found inside the trunk.

Defendant and Gicla were transported to the nearby eighth district police station. After routine processing, defendant was taken to the lockup and told that he would be taken to court the following morning. At approximately 11 p.m., defendant placed a telephone call to his aunt informing her of his arrest and requesting that his mother come to court the next morning with bond money.

On the motion to suppress, Sergeant Thomas O'Connor testified that in late February 1985, he became actively involved in the investigation of two similar sexual assaults which his brother, Detective Terrence O'Connor, and Detective Leonard Kukulka had been investigat-

ing from the time the assaults occurred in September 1984. Because the assaults were alleged to have been committed by a male and female, O'Connor had requested that he be notified of any arrests of Caucasian male-female teams. O'Connor also testified that he thought there might be a relationship between the sexual assaults and a series of auto thefts and thefts from cars which began in the same area shortly after the sexual assaults occurred.

Pursuant to notification of defendant's and Gicla's arrests, O'Connor and his brother went to the eighth district police station. At approximately 1 a.m., after conferring with other officers, O'Connor advised defendant of his *Miranda* rights and had a brief conversation with him. The sexual assault cases were not mentioned. O'Connor then conferred with his brother, who had met with Gicla in a second-floor interview room. Due to the lateness of the hour, they were unable to assemble a sufficient number of "control subjects" with physical characteristics sufficiently similar to defendant and Gicla to conduct a fair lineup for viewing of the victims. O'Connor therefore ordered a "hold" on defendant, *i.e.*, that defendant not be taken to court the following morning but, rather, to Area 3 headquarters for the purpose of conducting lineups.

O'Connor next spoke with defendant at 1 p.m. at Area 3 headquarters. He advised defendant of his *Miranda* rights and informed him that he was a suspect in two sexual assault cases and would be placed in a lineup later that day. At approximately 7 p.m. four separate lineups were conducted. Defendant was positively identified by both victims as the male assailant, and Gicla was positively identified as the female assailant.

At approximately 8 p.m., O'Connor reapprised defendant of his *Miranda* rights and informed him of the identifications. Defendant then made a statement admitting his involvement in the sexual assaults, after which he asked to speak with Gicla. When she was brought to the interview room, defendant encouraged her to admit her involvement also, which she did. At approximately 10 p.m., Assistant State's Attorney Babbitt met with defendant. After receiving the *Miranda* warnings from Babbitt, defendant repeated the inculpatory statement he had earlier made to O'Connor. However, defendant also stated that he was "uncomfortable" signing anything, and therefore refused to sign the written summary of his statement, prepared by Babbitt.

Following arguments by counsel, the trial court ruled that there was probable cause to arrest defendant for possession of a stolen vehicle and to detain him as a suspect in the sexual assault cases. The

court therefore denied defendant's motion to quash his arrest and suppress the statement and lineup identifications, and the case proceeded to trial.

Testimony at trial established that the complaining witness, S.W., was lured by subterfuge into an automobile driven by a woman, identified by complainant as Gicla. After her abduction, she was taken to various locations where she was brutally and repeatedly sexually and physically assaulted over a 12-hour period, by a man and woman whom S.W. identified as defendant and Gicla. Over defendant's objection, the testimony of J.S., the victim of an abduction and aggravated criminal sexual assault occurring three days after the crimes in the case at bar, was admitted by the court for the purpose of establishing identification. Her abduction and sexual assault are recounted at length and in detail in *People v. Smith* (1990), 199 Ill. App. 3d 839, 557 N.E.2d 596, defendant's appeal from his separate conviction of the crimes committed against J.S. The testimony of J.S. in the case at bar was virtually identical to that given by her in defendant's trial on those charges. On March 5, 1985, she viewed two lineups in which she positively identified defendant and Gicla as her attackers.

Officer Thomas O'Connor's testimony relating to his investigation of the crime and defendant's arrest was essentially the same as his suppression hearing testimony. At trial, however, he also testified to the substance of his conversation with defendant on the night of March 5, 1985. Defendant first denied any involvement in the crime. As they continued conversing, defendant mentioned that he rented a garden apartment near where J.S. had been abducted. The address was not the same as the one listed in defendant's arrest report and was previously unknown to the police.

After O'Connor informed defendant that he had been identified in the lineups, defendant made an inculpatory statement. According to O'Connor, defendant said that he and Gicla were driving on Archer Avenue when he noticed a blond girl walking. He exited the car in an alley and instructed Gicla to circle around the block and attempt to lure the girl into the car. The remainder of his statement was consistent with S.W.'s account of her abduction and sexual assaults.

Former Assistant State's Attorney Babbitt testified that the written summary of defendant's statement that Babbitt prepared was essentially the same as S.W.'s account of the crimes and O'Connor's summary of defendant's statement to him. Defendant read the statement and agreed that it was accurate but refused to sign it. Defendant also asked Babbitt if he would "go easy on [Gicla]." Babbitt explained that he had no authority in that regard.

It was stipulated that on June 18, 1985, defendant escaped from Cook County Hospital, where he had been sent for surgery. On June 25, 1985, he was arrested in Oak Lawn, Illinois. The State then rested.

Following the presentation of all the evidence, unnecessary to relate here as not relevant to the issues before this court, the jury found defendant guilty on all counts charged in the indictment. After denying defendant's motion for a new trial, the trial court sentenced defendant to an extended term of 60 years for aggravated criminal sexual assault and seven years for escape. This appeal followed.

OPINION

Defendant first contends that evidence concerning his statements and the lineup identifications of him made while he was in custody should have been suppressed as the fruit of an unlawful detention. Defendant has apparently abandoned his pretrial assertion that the police lacked probable cause to arrest him for possession of a stolen vehicle. He maintains, however, that the police lacked probable cause to arrest him for the sexual assaults because the descriptions provided by S.W. and J.S. of their assailants were too general to provide police with reasonable grounds to believe he committed those offenses. He argues that detaining him, beyond the time he was scheduled to appear in court on the possession charge, solely for investigatory purposes was unlawful.

Our criminal code allows a warrantless arrest when a police officer has reasonable grounds to believe that the person to be arrested has committed or is committing an offense. (Ill. Rev. Stat. 1985, ch. 38, par. 107—2(1)(c).) As used in the statute, "reasonable grounds" is synonymous with "probable cause" (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147). Probable cause exists when a reasonable and prudent person in possession of the knowledge of facts and circumstances known to the officer at the time of the arrest would believe that the suspect had committed the offense. (*Gerstein v. Pugh* (1975), 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854.) Whether the necessary probability is present depends on commonsense considerations and the totality of circumstances and facts known to the officer. *People v. Tisler*, 103 Ill. 2d at 236.

Although mere suspicion by the officer does not suffice to justify a warrantless arrest, evidence sufficient to convict is not necessary. (*People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605.) An officer may rely on his knowledge and law enforcement experience to draw reasonable inferences from facts and observations. Information pos-

sessed by officers working in concert is relevant in the determination of whether an arrest is lawful. *People v. Lee* (1986), 151 Ill. App. 3d 510, 502 N.E.2d 399.

■ In the instant case, the sexual assaults which the police were investigating occurred four days apart on the southwest side of the city. The police knew that each victim was abducted by a man and woman and driven away in a car. The male assailant was described as a Caucasian, 5 feet 5 inches to 5 feet 7 inches tall, between 140 and 150 pounds, 25 to 35 years old, with brown hair. The record discloses only that the woman involved was described as being a Caucasian, 5 feet 4 inches tall and approximately 140 pounds, but testimony established that both J.S. and S.W. had given more detailed descriptions of the woman to the investigating officers, and that S.W. spent three hours describing the woman to a police sketch artist. Officer O'Connor also testified that immediately after the assaults occurred, the police received numerous reports of auto thefts and thefts of purses and wallets from autos on the southwest side of Chicago. Although many of the reports did not contain a description of the offender, or contained descriptions not fitting defendant or Gicla, in some of the cases witnesses reported that the thefts were committed by a male and female of the same general descriptions as given of the male and female involved in the sexual assaults.

Within a few weeks of the assaults, the police conducted lineups, but no identifications were made. Officer O'Connor believed that there might be a connection between some of the auto thefts and the sexual assaults, and when he became actively involved in the investigation, he requested notification of any arrests of male-female "teams." Defendant and Gicla were arrested on the southwest side of the city in possession of a stolen vehicle. At the time of the arrest a stolen wallet was found on the back seat and, a short time later, a large bag full of purses and wallets which had been reported stolen was found in the trunk. When O'Connor arrived at the police station, he learned that defendant was a male Caucasian, 37 years old, 5 feet 7 inches tall, 150 pounds with brown hair. These physical characteristics were sufficiently similar to the descriptions given by S.W. and J.S. of the assailants to give rise to a reasonable inference that defendant and Gicla were the assailants.

We are not persuaded otherwise by defendant's argument that the victims' descriptions were "inconsistent" with his appearance because the victims did not mention his receding hairline or moustache. It is true that the failure of the victim to include a notable physical feature may affect the credibility of that description; however, minor discrep-

ancies between the description and the appearance of the offender do not destroy the validity of the victim's description. See *People v. Thomas* (1984), 121 Ill. App. 3d 883, 460 N.E.2d 402.

In the case at bar, S.W. told the police that the male abductor wore a blue bandana around his head, which may account for her failure to describe defendant's hairline. The absence of any notation by J.S. of this feature is inconsequential, particularly since the lineup photographs contained in the record show defendant had only a modestly receding hairline at the time of his arrest. Further, although defendant maintains and offered the trial testimony of his sister that he had worn a moustache for several years, the temporal focus in probable cause assessments is the time of the arrest. Even if the victims had expressly stated, which they did not, that the male assailant was clean shaven, the importance of that characteristic would be negated by the six-month interval between the assaults and the arrest for purposes of probable cause. The absence of facial hair in the victims' descriptions was a matter for consideration by the jury in its evaluation of the credibility of the witnesses and the weight to be given to their identifications of defendant. However, this alleged inconsistency does not support defendant's argument that the police lacked probable cause to believe he committed the offenses.

The totality of facts and circumstances, as described above and known to the police at the time of the arrest, provided the arresting officers with sufficient probable cause to detain defendant for purposes of a lineup and interrogation. We find no error in the trial court's denial of defendant's motion to quash his arrest and suppress his statements and the lineup identifications on the ground that probable cause for his detention was lacking.

Defendant contends that by preventing his appearance in court on the possession of a stolen vehicle charge, the police violated his fourth amendment right to a prompt judicial determination of probable cause for his arrest for that offense. Defendant argues that the officers' failure to take him to court as scheduled was not a "necessary delay" since the police had completed processing procedures for the possession of the stolen auto charge, and that his transfer to Area 3 instead was done solely to gather evidence against him on unrelated charges. He asserts that his statements and the lineup identifications were products of this fourth amendment violation and should have been suppressed. Defendant bases his contention on *Gerstein v. Pugh* (1975), 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854. We disagree.

In *Gerstein*, the United States Supreme Court held that the fourth amendment requires a judicial determination of probable cause

as a prerequisite to extended restraint of liberty following arrest. (*Gerstein v. Pugh,* 420 U.S. at 114, 43 L. Ed. 2d at 65, 95 S. Ct. at 863.) In conformance with *Gerstein,* section 109—1(a) of our criminal code provides that "[a] person arrested without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge in that county, and a charge shall be filed." Ill. Rev. Stat. 1985, ch. 38, par. 109—1(a).

The Illinois Supreme Court has held that a delay in presentment to a judge does not render a statement made during this interval inadmissible, but is a factor to be considered in determining the voluntariness of the statement. (*People v. Brooks* (1972), 51 Ill. 2d 156, 281 N.E.2d 326.) It is only when the statements are involuntary that they must be excluded. If the defendant meets his burden of showing actual and substantial prejudice as a result of the delay, the burden shifts to the State to demonstrate the reasonableness or necessity of the delay. *People v. Dees* (1981), 85 Ill. 2d 233, 422 N.E.2d 616.

In *People v. Pendleton* (1982), 104 Ill. App. 3d 1104, 433 N.E.2d 1076, and *People v. Smith* (1990), 203 Ill. App. 3d 545, 561 N.E.2d 252, the courts held that because the defendants' initial arrests for traffic violations were clearly based on probable cause, the subsequent lineup identification by a rape victim (*Pendleton*) and the confession of murder (*Smith*) were admissible against them at their trials. The court in *People v. Gomez* (1986), 147 Ill. App. 3d 928, 498 N.E.2d 767, held that requiring a defendant lawfully in custody for a traffic offense to appear in a lineup did not implicate any fourth amendment rights, even though the police did not advise the defendant that he had a right to post bail on the traffic warrant. In *People v. Littleton* (1988), 175 Ill. App. 3d 105, 529 N.E.2d 700, the court held that it was proper for the police to complete their total investigation prior to bringing the defendant before a magistrate approximately 30 hours later. In *People v. Martin* (1984), 121 Ill. App. 3d 196, 459 N.E.2d 279, the defendants claimed that the police deliberately delayed filing charges and taking them before a magistrate for the purpose of conducting lineups. The court held that conducting lineups for investigatory purposes prior to a preliminary hearing does not necessarily constitute law enforcement abuse. The court noted that *Gerstein* was concerned with the serious consequences of *extended restraint of liberty following arrest,* and that holding the defendants for only 24 hours did not constitute prolonged detention. *People v. Martin,* 121 Ill. App. 3d at 209.

■ In the instant case, defendant's motion to suppress his statements, on the basis that they were involuntary, and the lineup identifi-

cation, on the ground of improper suggestivity, was heard and denied, as was his motion for rehearing. Defendant abandoned his assertion that the lineup was improperly suggestive; and the trial court's ruling that his statements were voluntary was affirmed on appeal in *People v. Smith* (1990), 199 Ill. App. 3d 839, 557 N.E.2d 596. A later hearing was also held on defendant's motion to quash his arrest and suppress evidence.

In a thorough statement of its findings of fact and law, the trial court expressly found that the police had sufficient probable cause to arrest defendant for possession of a stolen vehicle, theft and a traffic offense. The court further ruled, and we agree, that the police had probable cause to detain defendant in connection with the sexual assault cases. Although the burden of showing prejudice was on defendant, the court noted that the testimony of Officer O'Connor indicated that a lineup would have been held prior to defendant's scheduled appearance in court, if it had been possible to assemble a group of persons with characteristics sufficiently similar to defendant and Gicla to constitute "fair" lineups, but that due to the lateness of the hour, it was not possible to do so. Finally, the court held that the delay in taking defendant for a judicial determination of probable cause on the possession charge was not unreasonable and did not constitute a violation of *Gerstein*. The court's ruling is amply supported by the record and case law.

■■ Defendant additionally contends, however, that by preventing him from appearing in court on the possession charge, the police intentionally "suspended his ability to invoke his right to counsel." Defendant argues that if he had been taken to court, he could have exercised his fifth amendment right to counsel by accepting the attorney the court would have been required to appoint for him (Ill. Rev. Stat. 1985, ch. 38, par. 109—1(b)(2)), and that the appointment of counsel would have prevented the police-initiated interrogation which culminated in his confession. We find no merit in defendant's position. We have already ruled that because the police had probable cause to detain him, their holding of him beyond the court call for the purpose of conducting a lineup was not unlawful.

Moreover, the record establishes that defendant was advised of his right to counsel twice before the time he was to appear in court on the possession charge and at least five times prior to his statement to the assistant State's Attorney. On each occasion, defendant declined counsel. Indeed, defendant's testimony on direct examination at the suppression hearing does not indicate that he utilized his telephone privilege to call an attorney or that he asked his family to se-

cure counsel for him; he merely requested that his mother come to court with bond money.

Defendant's lengthy criminal history evinces his familiarity with the criminal justice system, including a knowledge of his constitutional rights. In this matter, defendant chose not to exercise his right to counsel. Defendant was given the opportunity to obtain counsel prior to both the probable cause hearing and his statements (see *People v. Smith* (1990), 199 Ill. App. 3d 839, 557 N.E.2d 596), but he voluntarily waived his right to counsel.

The Court in *Gerstein* held that a probable cause hearing is not a prerequisite to prosecution by information nor will a subsequent conviction be vacated on the ground that the defendant was detained without a determination of probable cause. (*Gerstein v. Pugh*, 420 U.S. at 119, 43 L. Ed. 2d at 68, 95 S. Ct. at 865.) The Court reasoned that the probable cause hearing is not a "critical stage" in the criminal justice process, and may be conducted before a judicial officer in an informal, nonadversarial hearing, at which appointment of counsel is not required. (*Gerstein v. Pugh*, 420 U.S. at 120, 43 L. Ed. 2d at 69, 95 S. Ct. at 867.) Thus, although Illinois provides for the appointment of counsel for an indigent defendant at the probable cause hearing, that statutory provision does not derive from a constitutional mandate. Defendant suffered no violation of his fifth amendment right to counsel.

Defendant next contends that he was denied a fair trial by the admission of prejudicial evidence of other crimes, in contravention of the court's order limiting such evidence to the issue of identity. Specifically, defendant argues that the "vivid and gruesome" testimony of J.S. regarding various "brutal" and "perverted" acts of criminal sexual assault to which she was subjected, but to which S.W. was not, portrayed her assailants as "absolutely depraved" and thus served only to prejudice and inflame the jury against defendant.

Generally, evidence of other crimes is inadmissible if it has no relevance except to show the defendant's propensity to commit crime. (*People v. Tiller* (1982), 94 Ill. 2d 303, 447 N.E.2d 174.) The underlying rationale for excluding such evidence is not that it has no appreciable probative value but that it has too much. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292.) Evidence of other crimes is admissible, however, if it is relevant for any purpose other than to show the defendant's character or propensity to commit crime (*People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821), including, but not limited to, *modus operandi*, identity, motive, intent, common scheme or design, or placing defendant in proximity to the place

of the crime (see generally *People v. Kimbrough*, 138 Ill. App. 3d at 486-87). The admission of evidence is a matter within the discretion of the trial court, and its rulings will not be disturbed absent a clear showing of abuse of that discretion. *People v. Kimbrough*, 138 Ill. App. 3d at 490.

■ The extensive number of glaring similarities in the crimes, not necessary to restate here, demonstrates that there was more than sufficient evidence that they were committed by the same persons. Further, we believe that, overall, the testimony of J.S. was proper. For example, the testimony that when defendant confronted J.S. in the alley, he threatened that if she screamed he would "cut her up in tiny pieces" was admissible both because S.W., too, was held at knifepoint when abducted and during much of the time of her captivity, and also because it was necessary to explain how defendant and Gicla caused J.S. to enter the car. In other instances, it would have been difficult, if not impossible, to excise details and still present a coherent, chronological account of the crimes committed against J.S. and their similarity to the crimes committed against S.W. However, even assuming error in the introduction and admission of portions of the testimony of J.S., any such error is harmless beyond a reasonable doubt. Indeed, the evidence against defendant is so overwhelming that there is no reasonable possibility that the jury could have reached a different verdict.

Defendant also contends that the prosecutors engaged in misconduct during closing argument. He maintains that the cumulative effect of this misconduct denied him a fair trial.

In general, prosecutors are given wide latitude in their closing arguments, the only requirement being that the argument is based on the evidence or reasonable inferences from it. (*People v. Morgan* (1991), 142 Ill. 2d 410, 452-53, 568 N.E.2d 755.) Allegations of prosecutorial misconduct are to be reviewed in the context of the entire closing arguments of both the State and the defense. (*People v. Morgan*, 142 Ill. 2d at 453.) Where remarks by the prosecutor are provoked or invited by defense counsel, they will not be held improper. (*People v. Lyles* (1985), 106 Ill. 2d 373, 478 N.E.2d 291.) Even improper comments, however, will not serve as a basis for reversal unless they were so egregious and prejudicial that they constituted a material factor in the defendant's conviction, *i.e.*, that without them the verdict likely would have been different. *People v. Morgan*, 142 Ill. 2d at 453.

In the case at bar, no objections were made to the allegedly improper statements at trial, nor were objections to the prosecutor's ar-

gument raised in a post-trial motion. It is well settled that the failure to object at trial to allegedly improper remarks made by the State or to raise those objections with reasonable specificity in a post-trial motion normally constitutes a waiver of any error on appeal. (*People v. Smith* (1985), 139 Ill. App. 3d 21, 486 N.E.2d 1347.) However, even if not waived, our review of closing arguments discloses no basis for reversal.

■ Defendant asserts that the prosecutor exaggerated the identification evidence by characterizing S.W.'s memory of defendant as being like a "snapshot" which stored a picture of his face away forever, and by commenting that both S.W. and J.S. had recurring visions of defendant. Defendant argues that this was a "gross distortion" of the testimony because neither S.W. nor J.S. mentioned defendant's most prominent facial characteristic, his moustache. Defendant made the identical argument in his appeal from his convictions of aggravated sexual assault of J.S. The fifth division found that the prosecutor's remarks were allowable inferences that could be drawn from the evidence. We agree with that determination. The only evidence presented that defendant wore a moustache at the time of the crimes was the testimony of defendant's sister that he had worn a moustache for several years. In contrast, substantial evidence was introduced on the issue of the victims' identification of defendant. Testimony established that both S.W. and J.S. gave similar descriptions of the male assailant and that the descriptions fit defendant. Also, both women made immediate lineup identifications of defendant. In the case of S.W., Detective O'Connor testified that the moment she viewed the lineup assemblage, prior to any formal lineup procedures, she began shaking and crying, and pointed to defendant, saying "that's him." The State's remarks were a fair characterization of the evidence relating to the victims' ability to identify defendant.

■ Defendant also argues that the prosecutor misstated the function of the jury and thereby diminished the presumption of innocence. He quotes a passage from the State's rebuttal argument in which the State remarked that when S.W. was abducted, she was alone, but that in court she was safe because the jurors, not "as people alone anymore" but as a unit, had the power to hold defendant responsible for what he did. He maintains that by these remarks the State mischaracterized the jurors as advocates for and defenders of the victim. Again, a similar argument was made and rejected in defendant's previous appeal. (*People v. Smith*, 199 Ill. App. 3d at 855.) We do not believe the State's comments were a perversion of the nonpartisan nature of the jury, nor did they diminish the presumption of inno-

cence. Rather, the argument read in its entirety was a permissible urging of the fearless administration of justice. *People v. Stiff* (1989), 185 Ill. App. 3d 751, 542 N.E.2d 392.

Finally, defendant claims that a portion of the prosecutor's argument in which he stated that S.W.'s life had changed since the crimes and that "everything that was nice turned bad" was so prejudicial as to be plain error. Defendant argues that this argument had no relevance except to elicit the jurors' sympathy.

■■ All of the cases cited by defendant involved remarks relating to the victims' needs for psychiatric therapy as a result of the sexual assaults committed upon them. Further, in each case reversal was based on cumulative errors where the evidence was closely balanced. Those cases are clearly inapplicable to the case at bar.

In *People v. Tannahill* (1987), 152 Ill. App. 3d 882, 504 N.E.2d 1283, the court held that a reference that the victim was traumatized as a result of the sexual assault was a reasonable inference from the evidence presented at trial. In the case *sub judice*, the jury heard evidence that the victim was abducted at knifepoint and held captive for 12 hours, during much of which time she was tied and blindfolded, subjected to the running of a knife up and down her body and to repeated sexual assaults of varying types. We find defendant's argument that the jury convicted him, "not because it was persuaded by the evidence that no doubt of his guilt existed, but because it did not want to aggravate her suffering by finding [him] not guilty," incredible. Sympathy for S.W. was not evoked by the State's remarks, but rather by the heinous nature of the crimes and the overwhelming evidence that defendant committed those crimes.

For the reasons stated, defendant's conviction is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.